## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

VICTOR B. P.,

                    Plaintiff,

      v.

DR. JACK DANIELS AND
DR. DIONNE HART,

                  Defendants.

Case No. 19-cv-2663 (SRN/ECW)

**REPORT AND RECOMMENDATION**

---

This case is before the Court on Plaintiff Victor B. P.'s ("Plaintiff") Motion to Issue Stay Order to Force Medicate Without a Court Order (Dkt. 29); Dr. Jack Daniels and Dr. Dionne Hart's (collectively, "Defendants") Motion to Dismiss and/or for Summary Judgment (Dkt. 51); and Plaintiff's Motion for an Interlocutory Judgment in Reply to Defendant(s) Response Pursuant to Rules(s) 54(b) and 12(c)(4) of the Federal Rules of Civil Procedure (Dkt. 63). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion be granted and that Plaintiff's Motions be denied.

## I.      BACKGROUND

### A.    Factual Background

#### 1.    General Background

In 1992, Plaintiff was committed to the custody and care of the Attorney General pursuant to 18 U.S.C. § 4246(d). (Dkt. 54-1.) By order filed February 28, 2018, Plaintiff

was conditionally released from custody pursuant to 18 U.S.C. § 4246(e).  (*Id.*)  On

January 10, 2019, the Government moved to revoke Plaintiff's conditional release.  (*Id.*)

Plaintiff was civilly committed on January 19, 2019 pursuant to 18 U.S.C. § 4246.  (Dkt.

54 ¶ 3; Dkt. 54-1.)  Plaintiff is currently committed under § 4246 to the custody of the

Attorney General for hospitalization at Federal Medical Center-Rochester, Minnesota

("FMC-Rochester").  (Dkt. 54 ¶ 3; Dkt. 54-1; *see also* Dkt. 7.)

On May 20, 2019, the Chief of Psychiatry at FMC-Rochester, Jack Daniels, M.D.,

initiated nonemergent involuntary medication procedures for Plaintiff.  (Dkt. 54 ¶ 10;

Dkt. 54-3.)  If an FMC-Rochester psychiatrist recommends medication and the inmate

refuses to voluntarily take the recommended medication, the Bureau of Prisons ("BOP")

will provide the inmate with process prior to non-emergent involuntary medication in

accordance with the procedures outlined in Program Statement 6010.03.  (Dkt. 54 ¶ 5.)

### 2.    Program Statement 6010.03 and Application to Plaintiff

Under Program Statement 6010.03, "psychiatric medication . . . [could] only be

involuntarily administered [to Plaintiff] after an administrative hearing . . . complying

with the procedural safeguards in Section 7."  (Dkt. 54-2 at 5.)[1]  *See also* 28 C.F.R.

§ 549.45(c) (requiring certain administrative procedures set forth in 28 C.F.R. § 549.46

before medication may be involuntarily administered).  The relevant portions of Program

Statement 6010.03 essentially mirror the requirements of the applicable portions of 28

C.F.R. § 549.46's procedures for involuntary administration of psychiatric medication.

---

[1]    Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

### a.    Notice Required

Program Statement 6010.03 requires the following notice prior to forced medication:

> (2) The inmate must be provided 24-hours advance written notice of the date, time, place, and purpose of the hearing, including an explanation of the reasons for the psychiatric medication proposal.
>
> Use form BP-A0959, "Notice of Hearing and Advisement of Rights for Involuntary Hospitalization or Medication for Psychiatric Care or Treatment," to provide notice to the inmate. This form is filled out only by the referring psychiatrist currently involved in the diagnosis or treatment of the inmate. Any staff member may deliver a copy of the notice to the inmate.

(Dkt. 54-2 at 9.) *See also* 28 C.F.R. § 549.46(a)(2).

Here, as set forth above, on May 20, 2019, Plaintiff was given written notice from Dr. Daniels using form BP-A0959 that he had "been referred for a hearing before a Psychiatrist to determine whether you should be . . . Involuntarily Medicated . . . for the purposes of Psychiatric Care or Treatment." (Dkt. 54-3 at 1.) The notice set forth the date and time of the hearing as well as its location. (*Id.*) The notice also set forth the following reasons for the psychiatric medication:

> [Plaintiff] is diagnosed with schizophrenia. Per the most recent risk assessment, [Plaintiff] has a history of serious assaultive behavior against correctional staff when symptomatic and refusing medications. [Plaintiff] is civilly committed under 18 USC 4246 and is currently refusing anti-psychotic medications. He has no insight into his mental illness and cannot participate in a discussion of the risks and benefits of anti[-]psychotic medications. On May 16, 2019, [Plaintiff] was noted to be walking into the room of other patients/inmates and screaming at them that they "better be ready for war." He then walked into the office of the PA and did the same adding "don't fuck with the Supreme Being." [Plaintiff] made aggressive loud statements such as "I already told you not to fuck with the Supreme Being" and "I am not going to fucking talk to you." He was placed on SHS

status due to his increase paranoia, delusions, and aggressive behavior/speech.

(*Id.*)

In addition, Program Statement 6010.03 requires that the individual "be informed of the right to appear at the hearing, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearing." (Dkt. 54-2 at 9.) *See also* 28 C.F.R. § 549.46(a)(3). As part of his May 20, 2019 Notice, Plaintiff was notified of the following rights:

• A hearing before a Psychiatrist into whether you meet the criteria for involuntary hospitalization or medication. The Hearing Psychiatrist will not be your attending Psychiatrist, nor will s/he have been involved in your diagnosis or treatment;

• You are entitled to appear at the hearing. At the discretion of the Hearing Psychiatrist, your appearance may be by video-conference or in-person at your current facility;

• The opportunity to present evidence;

• The opportunity to have a staff representative available to assist you in compiling documentary evidence and written witness statements to present at the hearing;

• The opportunity to request witnesses;

• The opportunity to have a staff representative or the Hearing Psychiatrist question witnesses; and

• A copy of the written report of the Hearing Psychiatrist regarding the initial decision. The Report will include a detailed explanation justifying the decision.

(Dkt. 54-3 at 2.)

Staff attempted to give Plaintiff a copy of the Notice on May 21, 2019, at 9:30 a.m., but he refused to take the Notice or sign acknowledging he received it, and he did not request witnesses or a staff representative.  (Dkt. 54 ¶ 11; Dkt. 54-3 at 3.)

### b.    Hearing and Hearing Report

Program Statement 6010.03 requires that the hearing "be conducted by a psychiatrist other than the attending psychiatrist, and who is not currently involved in the diagnosis or treatment of the [individual]."  (Dkt. 54-2 at 9.)  *See also* 28 C.F.R. § 549.46(a)(4).  To the extent that an individual "does not request a staff representative, or requests a staff representative with insufficient experience or education, or one who is not reasonably available, the institution mental health division administrator must appoint a qualified staff representative."  (Dkt. 54-2 at 9.)  *See also* 28 C.F.R. § 549.46(a)(3).  As to witnesses, Program Statement 6010.03 states that "[w]itnesses should be called if they are reasonably available and have information relevant to the [individual's] medical condition or need for psychiatric medication.  Witnesses who will provide only repetitive information need not be called."  (Dkt. 54-2 at 10.)  *See* 28 C.F.R. § 549.46(a)(5).  In addition, Program Statement 6010.03 requires that "[a] treating/evaluating psychiatrist/clinician, who has reviewed the case, . . . be present . . . and . . . present clinical data and background information relative to the [individual's] need for psychiatric medication . . . ."  (*Id.*)  *See also* 28 C.F.R. § 549.46(a)(6).  Other members of the treating/evaluating team may also be called "to provide relevant information."  (*Id.*)

With respect to the conduct of the hearing and the resulting report, Program Statement 6010.03 requires as follows:

(7) The psychiatrist conducting the hearing must determine whether involuntary administration of psychiatric medication is necessary because, as a result of the mental illness or disorder, the inmate is dangerous to self or others, poses a serious threat of damage to property affecting the security or orderly running of the institution, or is gravely disabled (manifested by extreme deterioration in personal functioning).

(8) The psychiatrist must prepare a written report regarding the initial decision. The inmate must be promptly provided a copy of the initial decision report, and informed that he/she may appeal it to the institution's mental health division administrator. The inmate's appeal, which may be handwritten, must be submitted within 24 hours after receipt of the hearing officer's report. Upon request of the inmate, the staff representative will assist the inmate in preparing and submitting the appeal. The psychiatrist conducting the hearing uses form BP-A0961, "Hearing Report: Involuntary Medication for Psychiatric Care or Treatment," to prepare the written report regarding the initial medication decision.

The hearing psychiatrist must indicate the manner in which the hearing was held (in person or videoconference) on the appropriate section of the hearing report form. At the end of the hearing the hearing psychiatrist advises the inmate of his/her appeal rights and informs the inmate of the specific evidence relied upon in making the determination, the findings, and their justification. The inmate is also advised of the right to appeal the decision to the institution mental health division administrator within 24 hours of receipt of the hearing report. Any staff member may deliver a copy of the hearing report to the inmate.

(Dkt. 54-2 at 10-11.) *See also* 28 C.F.R. § 549.46(a)(7)-(8).

Although Plaintiff did not request a staff representative, a FMC-Rochester staff psychologist was appointed as his representative and appeared at the May 22, 2019 hearing. (Dkt. 54-4 at 1.) In addition, the Hearing Report noted that Plaintiff did not request any witnesses. (*Id.*) A non-treating psychiatrist held the hearing. (Dkt. 54 ¶ 12.) The hearing officer provided the following certification: "I certify I conducted this hearing and am not currently involved in the diagnosis or treatment of this inmate." (Dkt. 54-4 at 4.) Dr. Daniels presented background and clinical information regarding

Plaintiff's current level of functioning, such as his yelling at staff and inmates and refusing redirection, resulting in his placement in seclusion. (Dkt. 54 ¶ 12.) Plaintiff was given an opportunity to make a statement, but he ignored the hearing psychiatrist and his staff representative. (*Id.*; Dkt. 54-4 at 2.) Plaintiff had previously submitted a letter that appears to be related to a supreme being and dealing with various brides. (Dkt. 54 ¶ 12; Dkt. 54-4 at 2, 5.)

Dr. Daniels presented the following evidence:

> The offense for which [Plaintiff] is committed under 4246 is serious assault against BOP staff, committed during a period of refusing anti-psychotic medication. Since his return to FMC Rochester on a revoked conditional release, [Plaintiff] has refused to restart anti-psychotic medications. He has had increasingly agitated, disruptive and disorganized behaviors in milieu, culminating last Thursday, 5/16/19, in going into the PA[']s office, yelling at her, then going into another inmate's cell and yelling. He refused redirection and refused staff orders, resulting in placement in seclusion. He is now gravely disabled based on his unmedicated psychotic symptoms and is unable to safely live on the open unit.

(Dkt. 54-4 at 3; *see also* Dkt. 54 ¶ 12.)

The hearing psychiatrist concluded that Plaintiff met the criteria for involuntary medication "because he is gravely disabled (manifested by extreme deterioration in personal functioning)" based on the following justification:

> [Plaintiff], who is well known to us at the Federal Medical Center in Rochester, MN due to previous admission to the mental health department, was seen today during the presentation of his hearing for consideration of Involuntary Medication. After we reviewed and evaluated the reasoning for it. We are considering that due to [Plaintiff] continuing refusal for the use of medications placed him in a situation like the one occurred on 05-16-19 when he was driven by his paranoia and invaded another inmates room, screaming to him and saying "don't fuck with the Supreme Being" (him) and telling him "better be ready for war" also screaming to the Physician Assistant saying the same screaming. He has being admitted after his conditional

> release was revoked for not taking his medication in the community and refused them once he was admitted here on 03-04-19. He was civilly committed under 18 USC 4246 due to the assault of a Correctional Officer while he was incarcerated at FMC Butner, N.C. Due to his mental disorder which was diagnosed as Schizophrenia and most prominent on going symptoms of grandiose delusions; persecutory and religious ones; appears to be responding to internal stimulus or auditory hallucinations with no insight into his problems which he keeps refusing proper treatment for his mental disorder placing him in a gravely disable position.

(Dkt. 54-4 at 4.)

"The psychiatrist [conducting the hearing] must prepare a written report regarding the initial decision," which then "must be promptly provided" to the subject individual. (Dkt. 54-2 at 10.) *See also* 28 C.F.R. § 549.46(a)(8). Here, the written report was provided to Plaintiff on May 22, 2019 at 11:30 a.m. (Dkt. 54 ¶ 12; Dkt. 54-4 at 4.) The written report notified Plaintiff of his appeal rights:

> The inmate has been advised of the specific evidence relied upon in making this determination, the findings and their justification. The inmate has also been advised that if involuntary medication has been approved, he/she may appeal this decision to the Administrator of the Mental Health Division within 24 hours of receipt of this report, and the appeal will ordinarily be reviewed within 24 hours of its submission.

(Dkt. 54-4 at 4.)

### c.    Appeal Rights

An individual can then appeal the decision to FMC-Rochester's mental-health division administrator within 24 hours of receipt. (Dkt. 54-2 at 10-11.). *See also* 28 C.F.R. § 549.46(a)(8). "If the [individual] appeals the initial decision, psychiatric medication must not be administered before the administrator issues a decision on the appeal, unless a [specified] exception exists . . . ." (Dkt. 54-2 at 11.) *See also* 28 C.F.R.

§ 549.46(a)(9). "The [individual's] appeal will ordinarily be reviewed by the administrator or his designee within 24 hours of its submission. The administrator will review the initial decision and ensure that the [individual] received all necessary procedural protections, and that the justification for administering psychiatric medication is appropriate." (*Id.*)

Plaintiff did not appeal the hearing decision. (Dkt. 54 ¶ 13; Dkt. 54-5.)

### 3.    Treatment of Plaintiff

After the hearing, on May 24, 2019, Dr. Daniels prescribed fluphenazine (also known as Prolixin), 5 mg twice a day, for Plaintiff's schizophrenia, and benztropine, 0.5 mg as needed, for side effects associated with the fluphenazine. (Dkt. 54 ¶ 14; Dkt. 54-6 at 1.)

On October 8, 2019, FMC-Rochester psychiatrist Dionne Hart, M.D., noted that Plaintiff repeatedly voiced concerns about the fluphenazine and his plan to refuse scheduled medication, claiming it caused nosebleeds. (Dkt. 54 ¶ 15; Dkt. 54-7 at 1.) Dr. Hart told Plaintiff there was no correlation between his fluphenazine dose and nosebleeds, he used the same rational to refuse multiple medications, and he had nosebleeds even when non-compliant with anti-psychotic medication. (Dkt. 54 ¶ 15; Dkt. 54-7 at 1.)

On July 9, 2020, Dr. Daniels noted that Plaintiff had refused to take fluphenazine:

[Plaintiff] was seen for CCARE 4 MH follow-up during modified operations rounds, d/w psychology. [Plaintiff] has refused fluphenazine IM for the past week, despite Harper due process. He has been increasingly irritable over the last week. [Plaintiff] remains delusional and misunderstands his legal situation, although we discuss the difference between Harper and Sell. He

also continues to have somatic delusions and misperceptions about medication side effects. Finally, though, he agrees to a trial of abilify IM, risks and side effects d/w [Plaintiff].

(Dkt. 54-8 at 1; Dkt. 54 ¶ 16.)

Plaintiff is currently prescribed: (1) aripiprazole lauroxil, 1064 mg injection every eight weeks, (2) aripiprazole, one 5 mg tablet by mouth daily, and (3) divalproex ER (also known as Depakote), two 1000 mg tablets by mouth daily. (Dkt. 54 ¶ 17; *see also* Dkt. 54-9.) Apart from January 14 through 22, 2021, Plaintiff has consistently been taking the divolproex since December 25, 2020. (Dkt. 54 ¶ 18.) Plaintiff refuses the oral ariprazole but will accept his injection. (*Id.*)

## B.    Procedural Background

### 1.    Initial Complaint

Plaintiff filed this action on October 7, 2019 asserting that he was being forcibly medicated in violation of his civil and constitutional rights. (Dkt. 1.) He filed an Application to Proceed in District Court without Prepaying Fees or Costs ("IFP Application") on the same day. (Dkt. 2.) On February 20, 2020, the Court ordered Plaintiff to file an amended complaint that complied with basic pleading rules; described the specific factual and legal bases for his claims in a clear, complete, and well-organized fashion; clearly explained what, specifically, each Defendant actually did (or failed to do)

that allegedly violated the law; and stated whether he was suing Defendants in their individual capacities, official capacities, or both.  (Dkt. 6 at 3.)

### 2.    Operative Amended Complaint

On March 2, 2020, Plaintiff filed the operative Amended Complaint.  (Dkt. 7.)  He names two defendants: Jack Daniels, FMC-Rochester's "chief psychiatrist," and Dionne Hart, a "staff psychiatrist."  (Dkt. 7 at 1 (capitalization amended).)  Plaintiff alleges that since 2010, Defendants have wrongfully forced him to take prolixin, a psychotropic drug.  (*See id.* at 1-2.)  He claims that the drug causes him high blood pressure, body shaking, "constant" drooling, nosebleeds, and depression.  (*Id*. at 1, 4.)  He further contends that Defendants are forcing him to take prolixin without a court order, thus violating his constitutional rights.  (*See, e.g.*, *id.* at 1-2.)  He alleges that Dr. Hart ordered FMC-Rochester staff to give him prolixin, and that Dr. Daniels supported these orders.  (*Id.* at 2.)  Plaintiff suggests that he has claims under the Due Process Clauses of the Fifth and Fourteenth Amendments.  (*See id.* at 5.)  As relief, he seeks no injunctive relief, but requests $10 million in damages.  The Court previously concluded that it:

> [V]iews the Amended Complaint as raising eight claims: Fifth Amendment procedural-due-process claims against Defendants in their individual and official capacities, Fifth Amendment substantive-due-process claims against Defendants in their individual and official capacities, Fourteenth Amendment procedural-due-process claims against Defendants in their individual and official capacities, and Fourteenth Amendment substantive-due-process claims against Defendants in their official capacities.

(Dkt. 17 at 4.)

On July 13, 2020, the Court granted Plaintiff's IFP Application and issued a Report and Recommendation that recommended dismissal of all of Plaintiff's official

capacity claims and his Fourteenth Amendment claims. (Dkt. 17 at 6-8.) The only

remaining claims were "a Fifth Amendment procedural-due-process claim against

Defendants in their individual capacities and a Fifth Amendment substantive-due-process

claim against Defendants in their individual capacities." (*Id.* at 8.) Plaintiff objected to

the Report and Recommendation (Dkts. 21, 22), and U.S. District Judge Susan Richard

Nelson overruled his objections. (Dkt. 24).

### 3.    Second Amended Complaint

Without the Court's permission, Plaintiff filed a Second Amended Complaint.

(Dkt. 28.) The Statement of Plaintiff Second Amended Complaint is as follows:

> [Plaintiff], comes now, with contention(s) in Statement of Amended
> COMPLAINT of being WRONGFULLY FORCED MEDICATED [sic]
> without Court Approve and Order is that his ILLEGALLY FORCED
> MEDICATED IN DISREGARD of the DIRECTIVES that have been
> established by the United States Supreme Court concerning the medicating
> of CIVILLY COMMITTED DETAINEES.

(*Id.* at 2.)

The gravamen of the pleading is that Plaintiff has been forcibly medicated for the

past five years with prolixin, a psychotropic drug, without a court order in violation of

Supreme Court precedent in "Sell v USA." (*See id.* at 1-2.) He claims that the drug

causes him high blood pressure and nosebleeds. (*Id.* at 2.) He names two defendants:

Jack Daniels, FMC-Rochester's "chief psychiatrist," and Dionne Hart. The only acts

allegedly taken by Defendants "periodically increased that medication without

justification . . . ." (*Id.* at 2.) Based on the violations stemming from the alleged failure

to follow Supreme Court precedent, Plaintiff asserts claims under the due process clauses

of the Fifth, Eighth, and Fourteenth Amendments. (*Id.* at 3.)

By way of relief, Plaintiff seeks ten million dollars and an order to discontinue his

forced medication. (*Id.*)

The Court will proceed with analyzing the parties' various motions.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the pleadings are construed in the light most favorable to the non-moving party, and the

facts alleged in the complaints must be taken as true. *See Ashley Cnty., Ark. v. Pfizer,

Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all

reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601

F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under

Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil

Procedure 8 and meet the principles articulated by the United States Supreme Court in

*Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading

standard articulated by Rule 8 "does not require detailed factual allegations, but it [does

demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (cleaned up). *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004)). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)

## B.    Motion for Summary Judgment

Rule 12(d) requires that parties "be given a reasonable opportunity to present all the material that is pertinent to the motion" when a court treats a motion to dismiss as one for summary judgment. Parties are considered to have constructive notice that a court will treat the motion as one for summary judgment "when the moving party states that it is moving for summary judgment and the parties submit and refer to materials outside the complaint." *Machen v. Iverson*, No. CIV. 11-1557 DWF/JSM, 2012 WL 566977, at *12 (D. Minn. Jan. 23, 2012) (quoting *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008) (marks omitted)), *R.&R. adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012); *see also*

*Pinson v. Hadaway*, No. 18-CV-3420-NEB-KMM, 2020 WL 6121357, at *4 (D. Minn. July 13, 2020), *R.&R. adopted*, 2020 WL 5543749 (D. Minn. Sept. 16, 2020).

Here, Defendants explicitly stated in their opening brief that they were submitting materials outside of the pleadings, and that the Court, in considering those materials, could be required to convert the motion to one for summary judgment.  (Dkt. 53 at 18.) Defendants clearly defined the summary judgment standard and made arguments using it. In addition, they submitted a significant number of materials outside of the pleadings. (Dkt. 54 (and exhibits).)  When "a moving party makes these affirmative steps, sufficient constructive notice is provided, even when the nonmoving party is pro se."  *Pinson*, 2020 WL 6121357, at *4 (citing *Machen*, 2012 WL 566977 at *13).  Further, Plaintiff has not suggested that there are additional facts missing from the record or that require further development.  *See id.*  Based on this procedural posture, the Court finds that Plaintiff had adequate notice that Defendants' motion could be converted to a motion for summary judgment and will apply the standards of Rule 56 to certain aspects of the pending motion.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As this wording suggests, the initial burden of showing that no genuine issue of material fact exists lies with the movant.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is "material" only if resolving it might affect a suit's outcome under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, a factual dispute is "genuine" only if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").  When assessing a summary judgment motion, a court should believe the nonmovant's evidence and draw all justifiable inferences in the nonmovant's favor.  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158-59 (1970)).

### III.    ANALYSIS

**A.    Motion to Dismiss and/or for Summary Judgment**

While Plaintiff's operative First Amended Complaint does not specifically mention *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), he is asserting a claim for monetary damages against federal agents for alleged violations, namely a Fifth Amendment procedural-due-process claim against Defendants in their individual capacities and a Fifth Amendment substantive-due-process claim against Defendants in their individual capacities.  "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'"  *Hartman v. Moore*, 547 U.S. 250, 255 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)); *see also Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (citation omitted) ("*Bivens* claim is a cause of action brought directly under the United

States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.").

Defendants argue that *Bivens* should not be extended to the Fifth Amendment violations alleged by Plaintiff.  (Dkt. 53 at 10-18.)  The Supreme Court has recently made it clear that expansion of *Bivens* is "a disfavored judicial activity and [has] gone so far as to observe that if the Court's three *Bivens* cases had been decided today, it is doubtful that we would have reached the same result.  And for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*."  *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (cleaned up).  The Supreme Court has previously recognized *Bivens* claims brought for excessive force in violation of the Fourth Amendment dealing with a warrantless search and illegal arrest, *see Bivens*, 403 U.S. at 388; workplace discrimination on the basis of sex in violation of the procedural due process of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to a serious medical need in violation of the prohibition against cruel-and-unusual punishment under the Eighth Amendment, *see Carlson*, 446 U.S. at 14. *See also Ahmed v. Weyker*, 984 F.3d 564, 567 (8th Cir. 2020) ("On only three occasions has the Supreme Court recognized a cause of action under *Bivens*.") (cleaned up).

Given the presumption against extending the reach of *Bivens*, the Eighth Circuit has adopted a two-part test with respect to whether an implied cause of action is available under *Bivens*:

> Under step one, if a case "present[s] one of the three *Bivens* claims the Supreme Court has approved in the past," it "may proceed."  If it does not, then we go on to the next step.

At step two, the question is whether "any special factors counsel hesitation before implying a new cause of action." If there is "reason to pause before applying *Bivens* in a new context or to a new class of defendants, we must reject the request."

*Ahmed*, 984 F.3d at 567-68 (cleaned up) (citations and parentheticals omitted) (quoting

*Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019), and *Hernandez*, 140 S. Ct. at 743

("reject the request")).

As to the first step, in looking at whether the present case "is different in a meaningful way," the "relevant differences can include, among other things, 'the sorts of actions being challenged, the mechanism of injury, and the kinds of proof those injuries would require.'" *Id.* at 568 (quoting *Farah*, 925 F.3d at 500). Even small differences can be "meaningful." *Id.* (citations omitted).

The Court finds that the actions and mechanism of injury alleged here are different than those recognized by the Supreme Court. The only *Bivens* action under the Fifth Amendment recognized by the Supreme Court was in *Davis*, *supra*. In *Davis*, the Court held that the Fifth Amendment provided a damages remedy for a claim of gender discrimination, allowing the administrative assistant of a Congressman to sue her former employer after she was fired because she was a woman. *See* 442 U.S. at 230-48. The *Davis* Court noted that the Congressman's recent electoral defeat meant that "equitable relief in the form of reinstatement would be unavailing," and that the federal courts were well-equipped to evaluate the plaintiff's gender discrimination claim. *Id.* at 245. However, with respect to the Due Process Clause, the Court considered an implied cause of action under the Fifth Amendment as the "Due Process Clause of the Fifth

Amendment forbids the Federal Government to deny equal protection of the laws." *Id.* at 234. Here, not only is Plaintiff not asserting gender discrimination, but his claims with respect to due process do not involve equal protection. Given that the Supreme Court has not recognized a *Bivens* action dealing with forced medication on procedural or substantive due process grounds, Plaintiff's claims would require extending *Bivens* to a new context under the second step outlined by Eighth Circuit.

As to the second step, "[t]he focus is on whether there are any special factors that cause us to pause before acting without express congressional authorization. It does not take much, because Congress is usually in the better position to weigh the costs and benefits of creating a new substantive legal liability." *Ahmed*, 984 F.3d at 570 (cleaned up). These factors include whether a *Bivens* claim would interfere with the functioning of the executive branch and whether other remedies exist to deal with the injures alleged by Plaintiff. *Id.* at 570-71; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017) ("[A]n alternative remedial structure . . . alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Courts in this district have concluded, if *Bivens* claims were permitted to be extended in the context of the BOP's actions, then "BOP officials faced with the expanded possibility of personal liability may act differently . . . when dealing with [individuals] in BOP custody." *Biron v. Sawyer*, No. 19-CV-2938 (SRN/LIB), 2020 WL 6121270, at *15 (D. Minn. Aug. 21, 2020) (citation omitted), *R.&R. adopted sub nom.*, 2020 WL 5812970 (D. Minn. Sept. 30, 2020); *see also Brown v. Cooper*, No. CV 18-219 (DSD/BRT), 2018 WL 6977594, at *13 (D. Minn. Dec. 11, 2018) ("Moreover, Plaintiff's retaliation and equal protection claims implicate BOP

policies regarding medical treatment, disciplinary proceedings, and housing and cell assignments. BOP officials faced with the expanded possibility of personal liability may act differently with respect to these issues when dealing with inmates in BOP custody."), *R.&R. adopted*, 2019 WL 121943 (D. Minn. Jan. 7, 2019), *aff'd as modified*, 787 F. App'x 366 (8th Cir. 2019).

The Court finds that *Bivens* should not be extended to the due process claims alleged in this action given the interference it would present to BOP administration and the fact that alternative remedies exist. In *Washington v. Harper*, the Supreme Court found that the Due Process Clause permits the forcible administration of antipsychotic drugs to a mentally ill state prisoner "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." 494 U.S. 210, 227 (1990). The Supreme Court held that "that the administrative hearing procedures set by the [Washington State Special Offender Center] Policy do comport with procedural due process, and conclude[d] that the Washington Supreme Court erred in requiring a judicial hearing as a prerequisite for the involuntary treatment of prison inmates." *Id.* at 228. In so finding, the Supreme Court further noted that it could not "ignore the fact that requiring judicial hearings will divert scarce prison resources, both money and the staff's time, from the care and treatment of mentally ill inmates." *Id.* at 232 (citation omitted). Courts have extended *Harper* to involuntary medication in the civil commitment context. *See Ferch v. Jett*, No. 14-CV-1961 (SRN/TNL), 2016 WL 11394991, at *16 (D. Minn. Jan. 28, 2016) (citation omitted), *R.&R. adopted as modified on other grounds*, 2016 WL 916416 (D. Minn. Mar. 10, 2016)). Indeed, courts have concluded that 28 C.F.R.

§ 549.43, an earlier version of 28 C.F.R. § 549.46[2] applicable here, satisfied procedural

and substantive due process under the Fifth Amendment for the purposes of *Harper*.  *See*

*United States v. McAllister*, 969 F. Supp. 1200, 1206-08 (D. Minn. 1997).

The Court acknowledges that the Supreme Court in *Sell v. United States*, as argued

by Plaintiff, concluded that a court should determine whether forced medication is

appropriate, using a number of factors, including: (1) whether "important governmental

interests are at stake"; (2) whether "involuntary medication will significantly further

those concomitant state interests" such as whether the medication will allow a defendant

to stand trial; (3) whether "involuntary medication is necessary to further those interests,"

which includes examining if "any alternative, less intrusive treatments are unlikely to

achieve substantially the same results;" and (4) whether the "administration of the drugs

is medically appropriate, i.e., in the patient's best medical interest in light of his medical

condition."  539 U.S. 166, 180-81 (2003).  However, the Supreme Court in *Sell* examined

a different issue than that presented here.  The issue in *Sell* was whether "forced

administration of antipsychotic drugs to render [a defendant] competent to stand trial

unconstitutionally deprive[d] him of his 'liberty' to reject medical treatment?"  *Id.* at 177.

Here, the forced medication at issue is because FMC-Rochester determined Plaintiff was

"gravely disabled" due to his schizophrenia.  (Dkt. 54-4 at 4.)  Indeed, the Supreme Court

in *Sell* explicitly found that a court need not consider whether to allow forced medication

---

[2]    The procedures set forth by 28 C.F.R. § 549.43, an earlier version of 28 C.F.R. § 549.46, are essentially the same.  *Compare* 28 C.F.R. § 549.46, *with McAllister*, 969 F. Supp. at 1206 (citing 28 C.F.R. § 549.43).

for other purposes, including those outlined in *Harper*:

> We emphasize that the court applying these standards is seeking to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant competent to stand trial. **A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness**, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk.

*Id.* at 181-82 (bold emphasis added); *see also Ferch*, 2016 WL 11394991, at *17 (finding that *Harper* and not *Sell* applies to the medication of an individual civilly committed pursuant to 18 U.S.C. § 4246).  Since the BOP sought to medicate Plaintiff, who is civilly committed under § 4246, because of the danger he posed, the Court finds that the due process protections afforded by *Harper* apply, not the factors set forth in *Sell*.  Because there is a BOP administrative procedure in place to protect Plaintiff's due process rights, the Court finds special factors exist which counsel against extending liability to BOP employees in their individual capacities merely because they were following BOP regulations.  This is especially true here since, as Defendants concede (Dkt. 53 at 15), an alternative avenue remains available to Plaintiff to challenge Defendants' actions under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  *See McAllister*, 969 F. Supp. at 1212; *see also Abbasi*, 137 S. Ct. at 1865 (finding that "alternative remedies available" could include "a writ of habeas corpus," an "injunction requiring the warden to bring his prison into compliance," or "some other form of equitable relief").  As such, under the facts of this case, the Court finds that Defendants' Motion for Summary

Judgment as to Plaintiff's *Bivens* claims for monetary damages should be dismissed.[3]

## B.    Second Amended Complaint

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure a party may amend its complaint once as a matter of course without Court permission.  Fed. R. Civ. P. 15(a)(2).  Here, Plaintiff filed an Amended Complaint.  (Dkt. 7.)  "In all other cases, a party may amend its pleading only with the opposing party's written consent of the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Because Plaintiff has already amended his Complaint once, he needed permission from the Court to file the Second Amended Complaint, which he failed to obtain.

Even to the extent that the Court were to construe the Second Amended Complaint as a motion to amend, the Court would still deny the proposed amendment.[4]  The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court.  *See, e.g.*, *Niagara of Wisc. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure

---

[3]    As stated previously, the operative Amended Complaint makes no request for injunctive relief.  Moreover, courts that have considered the issue have determined that *Bivens* does not afford injunctive relief.  *See, e.g., Mendez v. Paul*, No. 18-CV-2817 (PJS/HB), 2019 WL 8370790, at *4 (D. Minn. Dec. 10, 2019) (collecting cases), *R.&R. adopted*, 2020 WL 563941 (D. Minn. Feb. 5, 2020), *aff'd*, No. 20-1353, 2020 WL 4876327 (8th Cir. June 1, 2020).

[4]    Normally a motion to amend is treated as a non-dispositive motion under the Local Rules, *see* D. Minn. LR 7.1(b)(4)(i), but as the proposed amendment is intertwined with the decision on the merits as to Defendants' Motion, the Court issues a recommendation rather than an order as to the proposed amendment.

that a case is decided on its merits, there is no absolute right to amend." *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citations omitted). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile.").

"Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard . . . ." *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted); *see also Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 511 (8th Cir. 2012) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) . . . .") (cleaned up).

As set forth by this Court in its July 13, 2020 Report and Recommendation, any due process claim under the Fourteenth Amendment against federal actors is futile. (Dkt. 17 at 6-8; *see also* Dkt. 24.) Further, any Eighth Amendment claim is futile on the basis that "because an involuntarily committed psychiatric patient is confined for treatment

rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (citations omitted). The Court acknowledges that Plaintiff seeks injunctive relief in the proposed Second Amended Complaint based on Defendants' alleged constitutional violations. *See generally Mohammed S. v. Tritten*, No. 20-CV-783 (NEB/ECW), 2020 WL 2750109, at *2 n.5 (D. Minn. May 27, 2020) (noting that 28 U.S.C. § 1331 may provide jurisdiction to consider a request for injunctive relief under the Fifth Amendment) (citations omitted). However, Plaintiff asserts that Defendants violated his Fifth Amendment Due Process rights because they medicated him without a court order as required under the Supreme Court's decision in *Sell*. For the reasons stated forth in Section III.A, *supra*, *Sell* does not apply to forced medication in the civil commitment context, rendering this claim futile.

For all of the reasons stated above, to the extent that the Court were to construe the Second Amended Complaint as a motion to amend, the motion should be denied.

## C.    Plaintiff's Motion to Stay

Plaintiff seeks an order staying his forced medication without a court order until the trial in this matter has concluded. The Motion provides the following basis for relief:

> COMES NOW, movant hereinafter [PLAINTIFF] in pro se WITH Motion to Issue a Stay Order to Medicate without a Court order until the outcome or the Ordered Trialo [sic] on the issue or the respondent(s) being authorized to Force Medicate the movant against. his will in which he has liberty Interest under. the Due Process of the Law Clauses. This action is ripe for trial where, [Plaintiff] seeks a Court Order to Stay the Forced Medication until the Outcome of the Ordered Jury Trial.

(Dkt. 29.)

The Court interprets this request as a request for a preliminary injunction. *See generally Stabnow v. Lourey*, No. 19-CV-1664 (NEB/HB), 2019 WL 5150155, at *1 (D. Minn. July 23, 2019) ("When a defendant has received notice and had an opportunity to respond to a motion for a TRO, the motion will be construed as one for a preliminary injunction.") (citing *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1052 n.1 (D. Minn. 2013)), *R.&R. adopted sub nom.* 2019 WL 4201071 (D. Minn. Sept. 5, 2019). "When determining whether to issue a preliminary injunction, [a] district court should consider '(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant [sic]; (3) the probability that movant will succeed on the merits; and (4) the public interest.'" *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (quoting *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The district court should balance all of these factors to determine whether to issue an injunction; no single factor decides the question. *See, e.g., Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (citing *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994)). The party seeking injunctive relief—here, Plaintiff—has the burden of establishing these factors. *See, e.g., id.* (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

The Court will consider each factor in turn.

### 1.    Irreparable Harm

For purposes of justifying a preliminary injunction, "'[i]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully

compensated through an award of damages.'" *Phyllis Schlafly Revocable Tr. v. Cori*, 924

F.3d 1004, 1009 (8th Cir. 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563

F.3d 312, 319 (8th Cir. 2009)). "The denial of a constitutional right is a cognizable injury

. . . and an irreparable harm." *Pavek v. Simon*, 467 F. Supp. 3d 718, 754 (D. Minn. 2020)

(quoting *Portz v. St. Cloud Univ.*, 196 F. Supp. 3d 963, 973 (D. Minn. 2016)). Here,

Plaintiff has argued in his Motion that he has a due process right to not be forcibly

medicated without a court order. (*See* Dkt. 29.)

The Court concludes that Plaintiff has suggested that irreparable harm could occur

if no injunctive relief is implemented. This factor favors Plaintiff.

### 2.    Balance of Harms and Public Interest

The balance-of-harms factor and the public-interest factor are separate *Dataphase*

factors. The Eighth Circuit has indicated, however, that when public governmental

entities are the potential target of an injunction, the two factors "to some extent . . . are

connected." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir.

1991). The Court will therefore consider these two factors together.

With respect to the balancing of the harms, courts in this District indicate that

analyzing this factor "involves assessing the harm the movant would suffer absent an

injunction, as well as the harm other interested parties would experience if the injunction

issued." *Pavek*, 467 F. Supp. 3d at 761 (citing *Mainstream Fashions Franchising, Inc. v.

All These Things, LLC*, 453 F. Supp. 3d 1167, 1203-04, (D. Minn. 2020)). This

assessment requires the Court to "'flexibly weigh the case's particular circumstances to

determine whether justice requires the court to intervene to preserve the status quo.'" *Id.*

(cleaned up) (quoting *Wood v. Kapustin*, No. 13-CV-1495 (DSD/AJB), 2013 WL 3833981, at *4 (D. Minn. July 23, 2013)).

As for the public-interest factor, the Court notes that numerous courts stress the principle that courts should be very wary of imposing injunctive relief with respect to the BOP's management of individuals in its custody.  *See, e.g.*, *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'") (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)); *O'Malley v. Birkholz*, No. 20-CV-0660 (ECT/TNL), 2020 WL 3064722, at *1 (D. Minn. May 13, 2020) (quoting *Goff*), *R.&R. adopted*, 2020 WL 3062183 (D. Minn. June 9, 2020).  The "courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Goff*, 60 F.3d at 521 (quoting *Rogers*, 676 F.2d at 1214).

In the present case, if the Court were to grant the relief that the Motion seeks, it would significantly intrude on the BOP's ability to protect its employees and other individuals in its custody given the evidence of Plaintiff's actions without psychotropic medication.  (Dkt. 54 ¶ 12; Dkt. 54-3 at 1; Dkt. 54-5.)  While the Court acknowledges that Plaintiff is being forcibly medicated, based on the evidence before the Court, it appears that he has received the due process protections required under *Harper* as set forth in 28 C.F.R. § 549.46.  (*See* Dkt. 54-2, Dkt. 54-3; Dkt. 54-4; Dkt. 54-5.)  The Court also notes Plaintiff's claims of side effects from the medications, but he has not provided

any evidence to support that the medications he is currently taking are responsible for his nosebleeds, hypertension, or depression.

Also weighing in favor of denying the Motion is maintaining the BOP's ability to manage its own affairs. Granting Plaintiff's requested relief would interfere in a particularly sensitive area of the management of those in the BOP's custody.

In sum, these two factors favor denying the Motion for Stay.

### 3. Likelihood of Success on the Merits

The last factor to consider is Plaintiff's likelihood of success on the merits of his claims. This factor "'has been referred to as the most important of the [*Dataphase*] factors.'" *Jet Midwest*, 953 F.3d at 1044 (brackets in *Jet Midwest*) (quoting *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). When considering the likelihood of success on the merits, a movant need only show a "'fair chance of prevailing.'" *Id.* at 1045 (quoting *Planned Parenthood Minn., N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). Furthermore, the movant need only "'establish a likelihood of succeeding on the merits of any one of [its] claims.'" *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (quoting *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 250 (D.D.C. 2003)).

This factor favors denying the Motion for Stay. Plaintiff complains that he is being medicated without a court order. However, this Court has already concluded that he is not entitled to such relief. *See* Section III.A, *supra*.

Looking holistically at all four *Dataphase* factors, the Court recommends denying the Motion for Stay. While the irreparable harm factor favors granting a preliminary injunction, the remaining factors do not, and the Court is particularly concerned that the request for relief, if granted, may needlessly impede BOP's ability to maintain safety at FMC-Rochester.

**D.    Plaintiff's Motion for an Interlocutory Judgment in Reply to Defendant(s) Response Pursuant to Rules(s) 54(b) and 12(c)(4) of the Federal Rules of Civil Procedure (Dkt. 63)**

In his self-styled Motion for Interlocutory Judgment, Plaintiff seeks relief pursuant Rules 54(b) and 12(c)(4) of the Federal Rues of Civil Procedure. (Dkt. 63.) Rule 54(b) provides in relevant part:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

Rule 54(b) affords Plaintiff no relief as it applies to interlocutory appeals of court orders. *See Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010).

Plaintiff also relies on a Rule 12(c)(4). While there is no Rule 12(c)(4), Rule 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A judgment on the

pleadings is only proper when there are no material issues of fact to be decided, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c); *Ashley Cnty., Ark.*, 552 F.3d at 665. On a motion under Rule 12(c), a court is to accept all facts pled by the nonmoving party as true and to draw all reasonable inferences from those facts in favor of the nonmovant. *See Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citing *Franklin High Yield Tax-Free Income Fund v. Cnty. of Martin*, 152 F.3d 736, 738 (8th Cir. 1998)). It is the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Ashley Cnty, Ark.*, 552 F.3d at 665 (citation omitted).

Because the Court has concluded that *Bivens* does not afford relief to Plaintiff in his operative Amended Complaint, the Court finds that any Rule 12(c) motion should be dismissed.

## IV.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1.     Plaintiff's Motion to Issue Stay Order to Force Medicate Without a Court Order (Dkt. 29) be **DENIED**.

2.     Defendants Dr. Jack Daniels and Dr. Dionne Hart's Motion to Dismiss and/or for Summary Judgment (Dkt. 51) be **GRANTED**.

3.     Plaintiff's Motion for an Interlocutory Judgment in Reply to Defendant(s) Response Pursuant to Rules(s) 54(b) and 12(c)(4) of the Federal Rues of Civil Procedure (Dkt. 63) be **DENIED**.

    4.    Plaintiff's Action be **DISMISSED WITHOUT PREJUDICE**.


Dated: April 12, 2021                                    _s/Elizabeth Cowan Wright_
                                                         Elizabeth Cowan Wright
                                                         United States Magistrate Judge


## NOTICE

**Filing Objections:**  The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).